By the Court.
On January 18, 1923, the Governor of Ohio caused to he filed in his office charges of misconduct, nonfeasance, and gross and willful neglect of duty in office against the relator, suspended him from office for 30 days, and upon final hearing March 1, 1923, permanently removed him from the office of mayor of the city of Massillon, Ohio, and filed with the secretary of state a full detailed statement of the reasons for such removal. The statement of charges is as follows:
*441 “State of Ohio, Office of the Governor.
“In the Matter of Charges Against Herbert H.
Vogt, Mayor of the City of Massillon, Ohio.
‘ ‘ Statement of Causes.
“I, Vic Donahey, Governor of the state of Ohio, by virtue of the authority in me vested by Sections 4268 and 6212-34 of the General Code, do. hereby declare that it is alleged that Herbert H. Vogt, mayor of the city of Massillon, Ohio, ought to be removed from said office for the following causes, to-wit:
“1. Misconduct in office.
“2. Nonfeasance in office.
“3. Gross and willful neglect of duty in office.
“Said misconduct, nonfeasance, and gross neglect of duty consisting in the following:
“1. That the said Herbert H. ‘Vogt, as such mayor, has from the 1st day of January, 1920, to the present time, failed to enforce the laws of Ohio relating to intoxicating liquors. Intoxicating liquors having been openly sold in many places in said city with the knowledge and acquiescence of said mayor.
“Among others at 1412 West Main street by William L. Nye at a place locally known as Lucky Strike Restaurant, and at a place on West Main street known as the Oak Restaurant and operated by Druehard Brothers.
“2. During the same period gambling houses have with the knowledge, acquiescence, and consent of the mayor and the police department of said city of Massillon been permitted to operate in many places in said city, among others by the same persons and at the same places mentioned in specvfi *442 cation No. 1, and by H. J. Burton on South Erie street in said city. Said place being operated under the name of J. J. Jackson.
“3. With the knowledge, acquiescence, and consent of the mayor houses of prostitution have been operated at many places in said city, among others by Alex. Paulus at 419 West Tremont street, at No. 16 Penn street, No. 209% West Tremont street, operated by Alex Paulus, and 421 and 425 Canal street.
“4. Said mayor during all of said period of time has knowingly, willfully, and intentionally permitted other laws of the state of Ohio to be violated without any effort on his part to prosecute or bring to justice the violators.
“5. At least 25 murders have been committed within the city of Massillon and on Columbia Heights, immediately adjacent to said city and within the police jurisdiction thereof, within the past 18 months, with scarcely any prosecutions on the part of the police department of said city.
“6. That he has appointed men to the position of chief of police, known by him to be open sympathizers with law violations and vice conditions in said city.
“7. That he appointed to the position of safety director of said city a man known by him to own the property on West Main street wherein the Oak Restaurant, which is a bootlegging and gambling joint, is operated.
“8. He has retained in office a safety director known by him to have received money from gamblers and violators of the laws against intoxicating liquors for permission to permit said gambling houses and liquor violators to operate.
*443 “9. The laws of Ohio relating to intoxicating liquors are openly violated by the police department, in that intoxicating liquors taken on raids by the police department are drunk by members of the police department and given away to other persons to drink in the police headquarters.
“If the said Herbert H. Vogt desires to be heard in his defense he may appear at the office of the Governor on the 13th day of February, 1923, at the hour of 1 o’clock p. m., at which time and place he will be then and there publicly heard.
“The said Herbert H. Yogt is hereby suspended from the office of mayor of said city of Massillon, Ohio, for the period of 30 days from this date unless sooner removed or reinstated.
“In witness whereof, I have hereunto set my hand this 18$h day of January, 1923.
“[Signed] Vie Donahey, Governor of Ohio.”
To these charges relator filed a general denial.
On February 20,1923, a hearing was had upon the charges. On such, hearing the Governor found the relator “guilty of nonfeasance in office and gross and willful neglect of duty in office, in that he did not enforce or in good faith try to enforce the laws,” “guilty of misconduct in office, in that, when the chief of police was compelled to resign under public pressure, the said resigned chief was appointed to another position as policeman. Again, the new chief was forced to resign under pressure, whereupon the former chief of police was restored to his old position as head of the police department. Fnrthermore, the second chief of police who resigned was subsequently restored in the police department at police headquarters. These appointments, res *444 ignations, and reappointments show the existence of a ring of officers notably lax in the enforcement of laws.”
The order of removal is as follows:
“Therefore, under the duty imposed upon me by the provisions of Sections 4268 and 6212-34,1 hereby remove the said Herbert H. Vogt from the office of mayor of the city of Massillon, Ohio, effective this 1st day of March, 1923.”
We have examined the record in this case and find the greater portion of the evidence to be either hearsay evidence or evidence relating to misconduct, nonfeasance, or gross and willful neglect of duty during a term of office which had expired, all of which was wholly incompetent; but it would reflect no credit upon the Chief Executive of the state should we assume that he permitted such evidence to influence his judgment. He being constituted by law the sole trier of the facts in such case, we will assume that his judgment was based upon competent evidence, if any such is disclosed by the record.
The record does contain competent evidence tending to prove that the relator, as mayor of the city of Massillon, acquiesced in the operation of a gambling place within the- city by the witness Burton, and advised him, “You might see some of the other boys,” probably referring to the members of the police department. There is evidence tending to prove that the witness Burton did open a gambling place, and that members of the police force were occasional visitors to that place and numerous other places within the city where gambling, the sale of intoxicating liquor as a beverage, and prostitution were being carried on. The evidence does not dis *445 close the actual knowledge of the relator of the existence of the gambling place of the witness Burton, and the other places where gambling, trafficking in intoxicating liqnor, and prostitution were being conducted, otherwise than by the testimony of the witness Burton as to a conversation with the relator, prior to the opening of his place, and by the fact that such places were notorious, well known to the police of the city and the public generally.
"While, were the duty imposed upon this court to weigh the evidence and try the facts in this cause, we would hesitate to convict upon the quantum of proof, the Legislature having made the judgment of the Governor final we can but determine whether there was any evidence tending to support the judgment. We are unable to say there was no evidence tending to support ,the finding that the relator was guilty of nonfeasance in office, and gross and willful neglect of duty in office, in that he did not enforce or in good faith try to enforce the laws.
In respect to the finding that the relator was guilty of misconduct in office in the selection of his chief of police and other police officers, it is sufficient to say that we know of no provision of law which authorizes the mayor to appoint his chief of police and' other law enforcement officers by and with the consent of the Governor.
The matter of the appointment of police officers is purely a matter of local self-government, and while the mayor of a city may be called to account for the conduct of such officers, of which he has knowledge, he may not be removed from office by reason of the past history or general character of such appointees.
*446 Touching the question of misconduct of the relator during a former term, it is not the purpose of the provision of the Constitution requiring the Legislature to enact laws providing for the prompt removal from office of officers guilty of misconduct, or of the Legislature in the enactment of Section 6212-34, General Code, in pursuance thereof, or in the enactment of Section 4268, General Code, prior to the adoption of the Constitutional provision, to vest in the Governor of the state, or any other tribunal, a veto power upon the right of the electors of the municipality to elect their own city officials, the right conferred being to remove for cause, which cause must arise during the term, and subsequent to the exercise of the power to elect vested in the electors of a municipality.
The record disclosing some evidence tending to support the charge of nonfeasance in office and gross and willful neglect of duty, this court, having reached the conclusion that both writs must therefore be denied, finds it unnecessary to pass upon the question which remedy the relator should have invoked, had he been entitled to either.
Both the writ in mandamus and the writ in quo warranto will be denied.
Writs denied.
Wanamaker, Robinson, Matthias, Day and Allen, JJ., concur.
Marshall, C. J., concurs in the judgment.